DECISION
Plaintiffs appeal the real market value of property identified as Account R692141 for the tax year 2009-10. A trial was held in the Oregon Tax Court, Salem, Oregon, on August 16, 2010. Richard Newkirk, Jr. (Newkirk) appeared on behalf of Plaintiffs. Natalie Bauer (Bauer) appeared on behalf of Defendant.
Plaintiffs' Exhibits A through M and Defendant's Exhibits A and B were received without objection.
 I. STATEMENT OF FACTS
The subject property is a two story condominium located in the Cedarwood Subdivision that restricts ownership to individuals 55 years of age and older. (Ptfs' Ex K.) The subject property is an end unit located among 34 developed properties, which were constructed beginning in the 1970s until 2003 when the last two condominiums were completed. (Ptfs' Exs K, L.) The subdivision owners pay a monthly fee ($150) to fund exterior and common area expenses. (Ptfs' Ex H.)
The subject property, built in 1994, has gross living area of 1,601 square feet on the first level and a 209 square foot open loft on the second level. (Ptfs' Ex B.) Newkirk testified that the loft area is of "marginal use" to Plaintiffs and potential buyers because of the stair access, *Page 2 
ceiling height, lack of closets and "other amenities." (Ptfs' Ex I.) The subject property's structure includes two bedrooms, two baths and a two-car attached garage. (Ptfs' Ex B.) Newkirk testified that, even though he concluded in his appraisal report that the subject property is of "average" exterior condition, he estimated deferred interior maintenance, "for a future anticipated heat/pump replacement," new carpet, paint, security system repair, water heater replacement, and other unidentified items totals "$21,000." (Ptfs' Ex I.)
Relying on his comparable sales analysis contained in his appraisal report, Newkirk determined a real market value of $175,000. (Ptfs' Ex B.) Newkirk selected five properties located in the Albany area and subsequently concluded that two of the sales (Sales 2 and 5) were not as similar to the subject property as Sales 1, 3 and 4. (Id.) Newkirk's adjustments to the actual sale price included lot size, actual age, gross living area, heating/cooling system, central vacuum system, and fireplace. (Id.) Newkirk did not adjust the actual sale price to the assessment date of January 1, 2009.
Sale 3, which is located in the same subdivision, sold on April 9, 2009, for $160,000. (Ptfs' Ex B.) Newkirk's adjusted sale price for Sale 3 without a time adjustment was $178,850. (Id.) When asked why he did not include a time adjustment, Newkirk stated that he presented sales on "either side of the assessment date." Newkirk estimated that a time adjustment would be "three or four percent."
Newkirk described the location of the subject property, testifying that it is situated close to a professional office, an "older" mobile home park with "single wide * * * a few double wide" and a large apartment complex. Newkirk testified that Sales 1 and 4 are located on the "other side of town in a neighborhood similar" to the subject property with "a dental office and office building" situated close by but "not close to a mobile home park." Bauer asked Newkirk why he *Page 3 
did not make adjustments for "location" when the comparable properties do not limit ownership to 55 years of age and older. Newkirk testified that Sales 1 and 4 are close to an "upper end subdivision" and the comparability among the properties is "similar." The parties disputed whether "parking" is comparable among the properties. Newkirk testified that the subject property has no "on street parking" and parking is allowed in the driveway or in one of the common areas offering three or four parking slots.
Bauer testified that she did not prepare an appraisal report. She testified that the county relied on the sale of two properties located on the same street as the subject property. Defendant's Sale 1 is the same as Newkirk's Sale 3. (Def's Ex A-2.) Defendant's Sale 2, which sold on December 30, 2008, was built in 1994 with 1,313 gross living square feet. (Def's Ex A-3.) Bauer concluded that "[g]iven the lack of sales in the Cedarwood development, a dollar per square foot analysis would be a reasonable indicator of value." (Def's Ex A-9.) Defendant's Sale 1 and 2 "price/gross living area[s]" were $127.39 and $121.86, respectively. (Id.) Bauer testified that the subject property "is valued at $106.72 per sq. ft." (Id.) Bauer concluded that the two sales support a real market value greater than is on the tax roll for 2009-10. She asked the court to conclude that the county's value "is reasonable and justified." (Id.)
 II. ANALYSIS
The issue before the court is the 2009-10 real market value of Plaintiffs' property. Real market value is the standard used throughout the ad valorem statutes except for special assessments. See Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). *Page 4 
Real market value is defined in ORS 308.205(1), [1] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A. Approaches of Valuation — Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See
ORS 308.205(2) and OAR 150-308.205-(A)(2) (2007). Because the subject property is the primary residence of Plaintiffs, the income approach is not applicable. Neither party considered the cost approach.
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corpand McKenzie River Motors v. Lane County Assessor, TC-MD-No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute, TheAppraisal of Real Estate 335 (12th ed 2001).
Newkirk used a comparable sales approach. Bauer did not present one of the three acceptable approaches of valuation. Newkirk selected properties, except for one comparable Cedarwood development property, that did not restrict ownership to individuals who were 55 years of age or older. An ownership restriction is a defining characteristic. Newkirk failed to consider the factor and appropriately adjust the comparable sales.
Most important, Newkirk failed to adjust each of the comparable sale prices to the assessment date. In addition, Newkirk did not include the one sale within the Cedarwood development that would not need a time adjustment or an ownership restriction adjustment. *Page 5 
Bauer's comparable sale 2 sold on December 30, 2008, almost the assessment date, for $160,000. (Def's Ex A-3.) The unadjusted sale price of Bauer's comparable sale 2 can be adjusted using the factors listed in Newkirk's appraisal for age, gross living square footage, heating/cooling, garage, and central vacuum. (Ptfs' Ex B.) After applying Newkirk's adjustments, the adjusted sale price of Bauer's comparable sale 2 would be approximately $183,000. One additional adjustment remains for lot size. There is no lot size given for Bauer's comparable sale 2. (Def's Ex A-3.) Newkirk's lot size adjustment for comparable sale 3 which is located in the same development was $2,500. (Ptfs' Ex B.) The court does not know if that is a correct adjustment amount to apply to Bauer's comparable sale 2; however, a lot size adjustment is necessary given Bauer's testimony that comparable 2 is in an "inferior location." (Def's Ex A-3.)
 III. CONCLUSION
Based on a careful review of the evidence and testimony, the court concludes that the 2009-10 real market value of Plaintiffs' property identified as Account R692141 is $185,000.[2] Now, therefore, *Page 6 
IT IS THE DECISION OF THIS COURT that the real market value of Plaintiffs' property identified as Account R692141 is $185,000 for the tax year 2009-10.
Dated this ____ day of November 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on November 30, 2010. The Court filed and entered thisdocument on November 30, 2010.
[1] All references to the Oregon Revised Statutes are to year 2007.
[2] At the conclusion of the evidence and testimony, Defendant offered to settle the case before the court if Plaintiffs would agree that the 2009-10 real market value of the subject property was $185,000. Defendant stated that he adjusted the sale price of two property sales located in the Cedarwood development to the assessment date and concluded that $185,000 was a reasonable real market value. After reviewing the evidence and testimony, the court agrees that a comparable sales approach supports Defendant's settlement offer that Plaintiffs declined. *Page 1